LEROY H. KENNEY *vs*. EVA S. PITT.

York. Opinion July 17, 1913.

*Assumpsit. Contract. Evidence. Extra Work. Materials. Motion. Recoupment. Workmanlike.*

1. When a party makes a contract to do work for a price certain, he cannot come into court and successfully defend his non-performance by saying that the contract price is inadequate. Having agreed to do the work in a certain manner and for a certain price he is bound to do it according to his contract.

On motion by defendant. Motion sustained. New trial granted.

This is an action of assumpsit on an account annexed to recover a balance of $70 claimed to be due plaintiff on a contract for repairing and building an addition to buildings in the town of Wells and also $458.39 claimed to be for extra work and materials in repairing and building said addition, amounting in all to $528.39. The defendant pleaded the general issue and filed a brief statement in which she claims to recoup for damages sustained by reason of the plaintiff's failure to perform said work according to his contract. The jury rendered a verdict for the plaintiff for

$453.00, and the defendant filed a motion for a new trial. The case is stated in the opinion.

*Allen & Willard,* for plaintiff.

*E. P. Spinney,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HALEY, JJ.

HALEY, J. This is an action of assumpsit, brought on an account annexed to recover a balance of $70 alleged to be due as the balance on a contract for repairing and building an addition to buildings in the town of Wells, and forty-one items claimed to be for extra work and material in repairing the building and building the addition, in all amounting to $528.39. The verdict was for the plaintiff for $453, and the case is before this court on a motion to set aside the verdict as against law and evidence.

The defendant pleaded the general issue, and recoupment by brief statement.

The defendant claimed at the trial that the plaintiff did not do the work, or furnish the material, according to the contract, that many of the items in the account annexed were for work called for by the contract, and that the plaintiff had been paid more than was due him by the terms of the contract, and for the extra work done and material furnished.

May 14, 1909, the plaintiff entered into a contract with the defendant to build an addition and make repairs to a set of buildings situated in Wells, with specifications attached to the contract. The price named in the contract was $2,060. Another item was afterwards added, making the contract price $2,070, and the plaintiff agreed that the labor and material as per plans was to "give a finished job," was "to be done in a thorough workmanlike manner," and that the work was "to be done in good faith and workmanlike manner."

The testimony clearly shows that the plaintiff's labor and material did not give a "finished job," that the work was not done "in a thorough workmanlike manner," or "in good faith." The floors were to be of good southern hard pine. It was clearly proved that the floors, when walked upon, buckled for want of sup-

port, so that the grooves broke, and the plaintiff's explanation of that, was, as the floor was built of short pieces that, if it did break, it could not break very bad. The plaintiff admitted (after it was proved) that in a room that was nine feet long some of the hard pine flooring was made up of pieces of flooring boards five feet long instead of nine feet in length, as they should have been, and that such work was not good workmanship. The contract called for a "good quality of southern hard pine, matched," for the top flooring. The plaintiff admitted that he used for that purpose a quality of southern hard pine known as sea rift flooring, and the testimony is that such pine is one of the poorest grades of southern hard pine, and that it is not suitable for house floors. In the dado in the dining room, in the space of three widths of the sheathing, there were fifteen knot holes and twelve pitch holes. The skylight in the sun parlor had no bedding for the glass, and in that room the gable end window was nailed together instead of being mortised and tenanted. Some of the glass in the roof of the sun parlor and gable window was not even puttied, but was held in place by brads. The finish was rough, and it was testified that it was all streaked up and torn out as if a rough plane had been used upon some of it. The joints were bad, some of the base boards were flush with the plastering, while other parts of the same board would be three-quarters of an inch from the plastering. Southern pine floors were laid in pieces, some of the pieces as short as eight inches, in the center of the room; the floors were not smoothed after being laid, and the finish and doors were full of knots, one knot in the stile of the door being four inches long and the width of the stile lacking one-quarter of an inch; the floors were marked with hammer blows; the roof leaked; in the kitchen the floor was laid so that one could look through into the cellar, where there were supposed to have been double floors with paper between; the contract called for the finish to match the finish in the part of the house not repaired, and it did not. The plaintiff claimed that the leaks came from the gutter of the old house, but it was shown that the water came in the new part built by the plaintiff.

If the jury believed the improbable story of the plaintiff, that the defendant, having a contract with the plaintiff to shingle with

No. 2 clear cedar shingles, waived that contract and gave consent that the plaintiff might take old pine shingles that came from a shingled wall and use them instead of new cedar shingles, even then, the plaintiff should have laid them in a workmanlike manner, and the evidence proves that they were nailed so close together that when it rained they swelled and broke and blew off the roof, which was not the way shingles do when laid in a workmanlike manner.

To the defendant's plea of recoupment the plaintiff claimed nothing should be allowed, and it was sought by the examination of the witnesses to prove that the job could not have been done for the contract price, and the same position is taken in the written argument filed in the case. A party who makes a contract to do work for a price certain, cannot come into court and successfully defend his non performance by saying that the contract price is inadequate. Having agreed to do the work in a certain manner for a certain price, he is bound to do it according to his contract.

The evidence clearly and satisfactorily shows that the plaintiff did not perform his part of the contract. The witnesses who made an examination of the premises described the defects that existed in workmanship and material, and their testimony is attempted to be explained away, not by a denial of the defects and deficiencies, which they enumerated in detail, but by the broad statement of the plaintiff that the material was suitable and the workmanship good, and that the defendant agreed to some of the work now complained of.

The testimony shows that the difference in the value of the property, if the contract had been performed by the plaintiff, and its value as the work was left by him, is from $500 to $700; but what sum the jury should have allowed it is unnecessary for us to discuss, as an examination of other parts of the case shows that, with much less than a reasonable deduction for the poor material and unworkmanlike manner in which the work was performed, the verdict should be set aside.

In the account annexed there is a charge of $116.87 for labor and skimming, and one for $40 for lime and plaster of paris. The contract called for the plastering to be smoothed to a good surface. The testimony shows that the defendant, by her husband, talked with the mason when he was plastering the rooms and protested

against the work, that he then protested to the plaintiff and stated that he would not accept the work unless performed according to the contract, that it should be smoothed to a smooth surface. Although the parties do not agree as to what else was said, there is no testimony that the plaintiff was authorized to skim-coat the rooms and charge the defendant for it as an extra, and the two items, amounting to $156.87, was charged for that work. It was the duty of the plaintiff to plaster the rooms so there would be a smooth surface. With that the defendant was bound to be satisfied, and if the plaintiff could not perform his contract by putting on one coat it was not the defendant's fault, and as the defendant never authorized, or promised to pay for that labor and material, the two items amounting to $156.87 should not have been allowed by the jury.

The plaintiff charged in the account for extras for 600 bricks at $18 per thousand that were used in building a chimney in the office built by the plaintiff. The defendant claims there was to be no charge for the chimney, that it was to take the place of other work, by agreement with the plaintiff. There was no evidence that the bricks were worth $18 per thousand, and it is a matter of common knowledge that such bricks as would be used in building a chimney in this house, where the plaintiff built one chimney of old bricks, were not worth more than $10 per thousand. The charge is for 600 bricks. According to the testimony, the bricks in the chimney were counted, and but 443 were used. The plaintiff charged $12 for labor in building the chimney, and the testimony of the man who built it shows that it was built in one day, and that the labor did not exceed $5.98. He charged $1.25 for hauling one bag of cement for the chimney, and $3 for hauling the bricks. The charge for the trucking may be all right, although some men would have hauled both at the same time and for less money than is charged; but there is no excuse for the excessive overcharge for bricks and labor, and there should have been deducted at least $12 from those items.

The charge of $10 for sills should have been disallowed. There was no promise to pay for them, and they were within the terms of the contract. The plaintiff also charged as an extra $15 for the

difference between the cost of plastering the office as he did and sheathing it as called for by the contract. The defendant denied that there was any agreement to pay extra for the plastering, and the disinterested carpenters, who testified in the case, stated that it was cheaper to plaster the room than it would have been to have sheathed it. If so, this item should have been disallowed. The plaintiff furnished 18 doors for the new ell, and furnished a very inferior quality of pine. The defendant objected for the reason that they were not according to the contract and were not suitable for the work. Thereupon the plaintiff substituted cypress doors of the same style (the cypress doors are spoken of in the case and in the account annexed as spruce; counsel state in their brief that this is a mistake and that it should have read cypress), and charged the defendant $18 extra for the doors. In other words, the plaintiff did not perform his contract as to furnishing doors, but attempted to palm off upon the defendant inferior doors, and when the defendant asked him to perform his contract, he furnished doors of another kind which might possibly be said to comply with his contract and charged the defendant $18 extra for performing that part of his contract.

It is useless to discuss all of the items in the account annexed. Some of them are admitted to be for extras, which the defendant ordered and which she is willing to pay for, but many of them were like the above items, part of the work and material that the plaintiff was bound by his contract to furnish and perform. It would seem, from an examination of the testimony, that the plaintiff increased the price for which he had agreed to furnish materials and do the work by doing inferior work and furnishing inferior materials, and when objection was made, attempting to make the work or furnish the materials almost as good as he had contracted to furnish, and then charge extra therefor. When the plaintiff first presented his bill for extra work and materials furnished, he claimed no balance due upon the contract. He next presented a balance due of $270 and sued for that amount.

The contract was for $2,070. The defendant introduced receipts, signed by the plaintiff, showing that she had paid the plaintiff $2,050, and upon his cross examination the plaintiff admitted that

they represented the amount paid.   He was recalled in rebuttal, after the adjournment over night, and then attempted to say that three of the $100 receipts were reckoned into the amount of another receipt.   His testimony upon cross examination, when he had every opportunity of explaining, and stated positively that they were not included in the other receipts, together with the positive testimony on the defendant's side, with the receipts and their dates, shows conclusively that the $2,250 was in fact paid the plaintiff, and that he was overpaid upon the contract the sum of $180, and the only conclusion that the jury were authorized to reach from the testimony was that the plaintiff had been overpaid that amount on the contract, which sum should be credited on the extra work and materials.

Deducting from the account annexed the items that were charged for as extras that were not extras, to which attention has been called, the overpayment upon the contract practically, if not entirely, wipes out all proper charges against the defendant, and the evidence shows conclusively that the premises, in the condition in which they were left by the plaintiff, were worth several hundred dollars less than they would have been if the plaintiff had performed the contract, and the defendant is entitled to recoup in this action for those damages which, with the overpayment, necessarily wipes out any claim that the plaintiff may have against the defendant growing out of the contract, or for extra work and materials.

*Motion sustained.*
*New trial granted.*